IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

VRF EYE SPECIALTY GROUP, PLC,   )
   )
   Plaintiff,           )
   )
v.                   )      No. 09-2216
   )
SETH L. YOSER, M.D., JAMES   )
BAIZE, and MEDICAL SOLUTIONS,   )
LLC,                )
   )
   Defendants.         )

---

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AGAINST SETH L. YOSER, M.D.

---

Plaintiff VRF Eye Specialty Group, PLC ("VRF" or the "Practice") alleges that Defendant Seth L. Yoser, M.D. ("Yoser") participated in a scheme in which he illegally procured medication from VRF, and, along with his co-defendants James Baize ("Baize") and Medical Solutions, LLC ("Medical Solutions"), resold that medication to VRF and various third parties. (See Compl. ¶¶ 1-29, ECF No. 1.) VRF argues that Yoser's actions violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, and various state laws. (See Compl. ¶¶ 30-64.)

Before the Court is VRF's Motion for Summary Judgment on its claims against Yoser filed on June 29, 2010. (See Mot. for

Summ. J. Against Yoser, ECF No. 26.) ("Pl.'s Mot.") Yoser responded on November 1, 2010. (See Def. Seth M. Yoser, M.D.'s Resp. to Pl.'s Mot. for Summ. J., ECF No. 44.) VRF replied on November 12, 2010. (See VRF's Reply Supporting Summ. J. Against Yoser, ECF No. 46.) ("Pl.'s Reply") For the following reasons, the Court GRANTS IN PART and DENIES IN PART VRF's Motion for Summary Judgment on its claims against Yoser.

**I.   Background[1]**

Organized as a limited liability company ("LLC"), VRF is a Memphis, Tennessee-based, multi-physician, medical practice that treats patients with vision problems. (Statement of Uncontested Material Facts Supporting VRF's Mot. for Summ. J. Against Yoser ¶ 1, ECF No. 26-2.) ("Pl.'s Statement"). Yoser practiced medicine at VRF from the time he entered into VRF's Operating Agreement (the "Agreement") until his expulsion on May 30, 2008. (Id. ¶ 3.) Under the Agreement, VRF's members were required to meet certain practice standards. (Id. ¶ 4; see also Ex. A §§ 6.7, 6.12, ECF No. 26-4.) If members failed to abide by those standards, they faced expulsion "for cause," with continuing liability for resulting damages set off against any amounts VRF owed them. (Pl.'s Statement ¶ 4; see also Ex. A §§ 6.7, 6.12.)

---

[1] Unless otherwise stated, all facts recited in the Background are undisputed for purposes of VRF's Motion for Summary Judgment.

After learning facts that led VRF to believe Yoser had engaged in professional misconduct,[2] Thomas Brown, VRF administrator, and Dr. Subba Gollamudi, chair of VRF's executive committee, confronted Yoser on May 14, 2008. (Id. ¶ 6.) The following day, VRF's members met to discuss Yoser's misconduct and voted to suspend him for the remainder of May, pending the results of an investigation. (Id. ¶ 7.) VRF states that the subsequent investigation revealed that Yoser had committed professional misconduct.[3] (Id. ¶ 8.) On May 30, 2008, VRF's members expelled Yoser after concluding that he had committed professional misconduct.[4] (Pl.'s Statement ¶¶ 10-11.)

On May 12, 2009, Yoser was charged with thirty-five counts of criminal wrongdoing, including ten counts of mail fraud, twenty-three counts of unlicensed wholesale distribution of

---

[2] Yoser contests VRF's statement that it learned of Yoser's misconduct around May 12, 2008, for lack of personal knowledge. (See Def. Seth M. Yoser, M.D.'s Resp. to Statement of Uncontested Material Facts ¶ 5, ECF No. 44-4.) ("Def.'s Statement") The exact date VRF learned of Yoser's misconduct is not material.

[3] Yoser contests the paragraph in which VRF states this fact because he "is unaware of the facts alleged" in the statement. (Def.'s Statement ¶ 8.) Because Yoser directs the Court to no evidence, the Court accepts that fact as true. See W.D. Tenn. Civ. R. 7.2(d)(3) (requiring a party opposing summary judgment to respond to the moving party's statement of undisputed facts "by affixing to the response copies of the precise portions of the record relied upon to evidence . . . that the . . . designated material facts are at issue"); Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007) (explaining that, where the non-moving party fails to follow Local Rule 7.2(d)(3), courts in this judicial district "consider the [moving party's] statement of undisputed material facts as having been admitted").

[4] Yoser admits that VRF's members expelled him after reaching this conclusion, but he contests the underlying facts. (See Def.'s Statement ¶ 10.)

prescription drugs, and wire fraud.[5]   (Ex. 5, ECF No. 26-13.)
Yoser entered a plea of guilty to all charges and was sentenced
to forty-two months in prison and ordered to make a restitution
payment of $400,000.00 to VRF.[6]   (See Ex. 6, ECF No. 26-14; Pl's
Statement ¶ 13; Def. Seth M. Yoser, M.D.'s Resp. to Statement of
Uncontested Material Facts ¶ 14, ECF No. 44-4 ("Def.'s
Statement"); Ex. A, at 5, ECF No. 44-1.)

        During his criminal proceeding, Yoser admitted that between
July 2002 and May 12, 2008, he devised and implemented a scheme
to enrich himself financially by defrauding VRF and Medicaid
through false billings and representations.  (Pl.'s Statement ¶
15.)   Yoser procured unused prescription drugs from VRF and
illicitly resold those drugs.   (See id. ¶¶ 17, 23.)   At the
time, VRF had a system to monitor the use of medication by its
members.   (See id. ¶ 9.)   VRF marked each vial of medication
with two identical labels containing a unique letter-number
code.   (See id.)   When dispensing medication to a patient, a
treating physician was required to place one label on the

---

[5] VRF originally stated that Yoser was indicted on thirty-five charges.  (See
Pl.'s Statement ¶ 12.)   After Yoser contested that statement, however, VRF
acknowledged that the case against Yoser was not indicted but was criminally
charged through an information.  (See Def.'s Statement ¶ 12; Pl.'s Reply ¶ 4,
ECF No. 46.)
[6] VRF originally stated that Yoser was to pay $400,000.00 in restitution to
Medicare and Medicaid Services, as stated in the Redacted Judgment in Yoser's
criminal case.   (See Pl.'s Statement ¶ 13; Ex. 7, at 5, ECF No. 26-15.)
Yoser contested that statement, and both parties now agree that the
$400,000.00 restitution was to be paid to VRF, according to the Redacted
Amended Judgment in Yoser's criminal case.  (See Def.'s Statement ¶ 14; Pl's
Reply 4-5; see also Ex. A, at 5, ECF No. 44-1.)

patient's chart and the other on the patient's payment ticket. (See id.) The Agreement required VRF physicians to administer only one dose of medication from each vial and discard the remainder. (See id.) To covertly procure the unused prescription drugs he resold, Yoser would obtain the number of vials he believed necessary to treat his patients on a particular day, but, as he treated his patients, he would administer multiple doses of medication from a single vial.[7] (See id.) That process allowed Yoser to obtain more vials than he actually used and provided him with sufficient labels to affix to his patients' charts so that VRF could bill them or their insurance providers, allowing his scheme to continue. (See id.) Yoser also performed placebo injections on patients and took "leftover medication[]" from VRF. (Pl.'s Statement ¶¶ 16, 22.) In that way, Yoser acquired the medication he resold.

Once Yoser had covertly obtained medication from VRF, he resold it through Medical Solutions, a Cordova, Tennessee-based entity. (Pl.'s Statement ¶¶ 2, 24.) Yoser used the U.S. Postal Service and interstate wire transfers to resell medication to third parties, including some outside Tennessee. (Id. ¶¶ 23, 25.) Specifically, Yoser or Medical Solutions received the following payments for medication he had wrongfully procured

---

[7] Yoser states that the paragraph in which VRF states this fact "is not complete." (Def.'s Statement ¶ 9.) Because Yoser directs the Court to no evidence showing that the fact is in dispute, the Court accepts it as true. See W.D. Tenn. Civ. R. 7.2(d)(3); Akines, 512 F. Supp. 2d at 1147-48.

from VRF: 1) $758,400.00 from Retina Specialist P.A. of Corpus Christi, Texas, for 607 vials of Visudyne and 16 vials of Lucentis; 2) $89,900.00 from West Memphis Eye Center of Memphis, Tennessee, for 65 vials of Visudyne; 3) $190,500.00 from ARK-LA-TEX Retinal Consultants of Shreveport, Louisiana, for 162 vials of Visudyne; 4) $54,400.00 from Retina Associates P.A. of Little Rock, Arkansas, for 40 vials of Visudyne; 5) $375,010.00 from Hughes Eye Center of Jackson, Tennessee, for 156 vials of Lucentis, 55 vials of Visudyne, and 24 vials of Avastin; and 6) $1,952,000.00 from VRF itself for 620 vials of Visudyne and 615 vials of Lucentis. (Pl.'s Statement ¶¶ 26-31.)

The parties dispute the impact of Yoser's scheme on VRF. VRF contends that Yoser injured VRF in its business and property. (Pl's Statement ¶ 33; Pl's Reply 5-8.) According to Yoser, his scheme did not damage VRF's property, and VRF received full restitution for any business losses. (Def.'s Statement ¶ 34.)

The parties also dispute the extent to which Yoser must indemnify VRF for its costs and fees. Under the Agreement, Yoser is liable to VRF for "any and all damages caused by the acts or omissions that gave rise to his Expulsion for Cause, including, without limitation, attorneys' fees and disbursements incurred in connection therewith." (Pl.'s Statement ¶ 35; see also Ex. A § 6.12(c)(ii).) Yoser contests the "amount, mode,

method, necessity and reasonableness" of VRF's costs and fees. (Def.'s Statement ¶ 35.) Specifically, Yoser contests the "reasonableness, necessity and relationship to" VRF's alleged damages of the following amounts: 1) $31,764.00 in fees and expenses paid to Southern Professional Group ("SPG"); 2) $35,188.00 in fees and expenses paid to Waller Lansden Dortch & Davis, PLLC ("Waller Lansden"); 3) $142,254.56 in fees and expenses paid to Burr & Forman, LLP ("Burr & Forman"); and 4) an additional $55,468.59 in attorney's fees and expenses paid to Burr & Forman for legal work on this action. (Def.'s Statement ¶¶ 36-39.)

On April 10, 2009, VRF brought this suit against Yoser, Baize, and Medical Solutions, alleging civil violations of RICO and various state-law claims. (Compl. ¶¶ 30-64.) Yoser answered VRF's Complaint on June 22, 2009, and amended his answer on September 2, 2009. (See Answer, ECF No. 12; Am. Answer, ECF No. 18.) On June 29, 2010, VRF filed the motion now before the court, seeking summary judgment on its its two civil RICO claims and its state-law claims for breach of duty and conversion.[8] (See Pl.'s Mot. 1.) VRF requests indemnification

---

[8] VRF styles Count V as a claim for "Deception, Theft and Misrepresentation." (Comp. 11.) Nothing in VRF's Complaint or memoranda in support of summary judgment explains the cause of action on which VRF relies or the elements of that cause of action. Because VRF's Complaint alleges that "Yoser . . . has wrongly taken and converted to his own use property belonging to the [P]ractice," the Court construes Count V as a claim for conversion. (See id. ¶ 63.)

for fees and expenses, treble damages under RICO, and a declaratory judgment.  (Id.)

## II.  Jurisdiction and Choice of Law

Because VRF alleges that Yoser's misconduct constitutes a civil violation of RICO, 18 U.S.C. § 1962(c), the Court has federal question jurisdiction.  See 28 U.S.C. § 1331; 18 U.S.C. § 1964(d) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."); Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 318 (6th Cir. 1999) (noting that RICO claims provide basis for federal question jurisdiction).  The Court has supplemental jurisdiction over VRF's state-law claims.  See 28 U.S.C. § 1367(a).

State substantive law applies to state-law claims brought in federal court.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  Whether characterized as contract or tort claims, Tennessee substantive law applies to VRF's state-law claims.  VRF and Yoser entered into the Agreement, which includes a choice of law provision stating that it "shall be governed in all respects, including validity, interpretation and effect by, and shall be enforceable in accordance with the internal laws of the State of Tennessee, without regard to conflicts of laws principles."  (Ex. A § 16.15.)  The injury that VRF alleges

occurred in Tennessee, and the parties agree that Tennessee law applies.   Therefore, the Court will apply Tennessee substantive law to VRF's state-law claims.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).  The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case.  See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial.  A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).   One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.   See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   Instead, the nonmovant must present "concrete evidence supporting [his] claims."  Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted).   The district court does not have the duty to search the record for such evidence.  See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).   The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor.   See id.   "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut."  FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

### IV.  Analysis

#### A. RICO Claims

VRF has moved for summary judgment on two RICO claims against Yoser.  Under Section 1962(c) of RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering." See 18 U.S.C. § 1962(c). To establish a violation of this section, a plaintiff must show "1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." Sedima, S.P.R.L v. Imrex Co., Inc., 473 U.S. 479, 498-99 (1985); Moon v. Harrison Piping Supply, 465 F.3d 719, 723 (6th Cir. 2006) (citation omitted). To bring a civil RICO claim, a plaintiff must also show that he was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

VRF brings RICO claims against Yoser under two distinct theories. First, VRF alleges that Yoser participated in the conduct of VRF's affairs, victimizing it through a pattern of racketeering activity. (See Compl. ¶¶ 30-39.) Second, VRF alleges that Yoser conducted a pattern of racketeering activity through Medical Solutions. (Id. ¶¶ 40-49.) Even assuming that VRF were to establish violations of 18 U.S.C. § 1962(c) based on one or both of those theories, the record before the Court does not establish that VRF was "injured in [its] business or property by reason of a violation of section 1962." See 18 U.S.C. § 1964(c).

An injury to business or property is a concrete financial loss, rather than personal injury, mental suffering, or injury to another intangible interest. See Saro v. Brown, 11 F. App'x

387, 389 (6th Cir. 2001) (citations omitted); see also Iron Workers Local Union No. 17 Ins. Fund and its Trs. v. Philip Morris Inc., 29 F. Supp. 2d 801, 822 (N.D. Ohio 1998) ("The requirement that a plaintiff suffer an injury to its 'business or property' means that the plaintiff must show a proprietary or economic type of damage.") (citing Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 151 (1987)). Physical injury or mental suffering do not constitute injuries to business or property that allow a private plaintiff to sue for civil damages under RICO. See Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th Cir. 1989) (citing Drake v. B.F. Goodrich Co., 782 F.2d 638, 644 (6th Cir. 1986)).

VRF argues that, because "Yoser admitted that he took [medication] from VRF [that] had a value of $3,420,210," it is "undisputed that . . . his activities injured VRF in its business and property." (Mem. of Law Supporting VRF's Mot. for Summ. J. Against Yoser 9, ECF No. 26-1.) ("Pl.'s Mem.") In support of that argument, VRF cites six paragraphs of its statement of undisputed material facts in support of summary judgment. (Id.; see also Pl's Statement ¶¶ 26-31.) Each paragraph states that Yoser distributed vials of medication to VRF or a third party in return for payment to Yoser or Medical Solutions. (See Pl.'s Statement ¶¶ 26-31.) Because Yoser does not contest those paragraphs, (see Def.'s Statement ¶¶ 26-31),

they establish that Yoser or Medical Solutions received payments in that amount.

Although the cited paragraphs establish that Yoser experienced financial gain in the amount of $3,420,210.00, they do not establish that VRF suffered injury to its business or property in that amount. (<u>See</u> Pl.'s Statement ¶¶ 26-31.) To avoid detection as he procured medication from VRF, Yoser ensured that patients (or their insurers) were billed for that medication. (<u>See</u> Pl.'s Statement ¶ 9.) Because that fact shows that VRF was reimbursed for at least some of the medication Yoser wrongfully procured, VRF did not necessarily suffer financial loss equal to Yoser's gain. For that reason, the paragraphs relied on by VRF do not establish that it suffered a financial loss of $3,420,210.00.

The cases cited by VRF show that a plaintiff's financial loss sometimes equals a defendant's gain. <u>See</u> <u>Blue Cross and Blue Shield of Mich. v. Kamin</u>, 876 F.2d 543 (6th Cir. 1989); <u>Allstate Ins. Co. v. Seigel</u>, 312 F. Supp. 2d 260 (D.Conn. 2004). In each of those cases, a plaintiff insurance company brought suit to recover payments it had allegedly made to a defendant medical provider based on the defendant's fraudulent submissions. <u>See</u> <u>Blue Cross</u>, 876 F.2d at 544-45; <u>Allstate</u>, 312 F. Supp. 2d at 263-64, 69-70. Therefore, in those cases, the plaintiff's alleged financial loss would have been equal to the

13

defendant's alleged financial gain.  See Blue Cross, 876 F.2d at 544-45; Allstate, 312 F. Supp. 2d at 263-64, 69-70.   Unlike those cases, the record here shows that, although Yoser took medication from VRF, VRF received reimbursements for some of that medication, as if it had been properly used by VRF physicians.  (See Pl.'s Statement ¶ 9.)   Therefore, the cases cited do not support VRF's argument that it suffered financial loss equal to Yoser's gain.

VRF alternatively argues that, because it "is undisputed that Yoser owes $400,000.00 to VRF in accordance with" his criminal judgment, it has established an injury to business or property equal to that amount.  (Pl.'s Reply 5-6.)  According to Yoser, the $400,000.00 restitution in his criminal case stems from a settlement between VRF and Medicare.  (Mem. in Supp. of Resp. to Mot. for Summ. J. 11, ECF No. 44-2.)  ("Def.'s Resp.") Yoser argues that, because the settlement terms are not in the record before the Court, "the nature of that loss is not established." (Def.'s Resp. 11.)

When issuing a criminal judgment, a court can order a person to pay restitution in cases involving violence, drugs, or product tampering, or in any case "in which an identifiable victim . . . has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(B).  When the court imposed Yoser's judgment, it ordered him to pay $400,000.00 to VRF.  (See Ex. A., at 5.)

14

The court presumably imposed that restitution requirement because VRF had "suffered a physical injury or pecuniary loss." See 18 U.S.C. §3663A(B). However, the judgment itself does not state the basis for imposing restitution. (See Ex. A, at 5.) Although it is possible the court issuing Yoser's criminal sentence imposed restitution to compensate VRF for a pecuniary loss, VRF has the burden to submit evidence conclusively showing that the Court did so. See Kochins, 799 F.2d at 1133. Based on the judgment alone, the Court cannot conclude that the Yoser's $400,000.00 restitution requirement establishes a concrete financial loss to VRF and, therefore, an injury to its business or property.

As the party seeking summary judgment, VRF must "clearly and convincingly establish[]the nonexistence of any genuine issue of material fact." See Kochins, 799 F.2d at 1133. Because VRF bears the burden of proof on its claims at trial, it has the obligation to see that evidence supporting its claim is in the record and to direct the Court's attention to that evidence. See Jackim v. Sam's East, Inc., 378 F. App'x 556, 563 (6th Cir. 2010). Even assuming that Yoser's conduct violated 18 U.S.C. § 1962(c) under one or both of the theories that VRF has articulated, there is a genuine issue of material fact about whether VRF suffered a concrete injury to its business or property as a result of that conduct, as required by 18 U.S.C. §

15

1964(c).   Therefore, VRF's motion for summary judgment on its civil RICO claims is DENIED.

### B. Breach of Duty

VRF argues that Yoser breached his duty to abide by practice standards under the Agreement.  (Pl.'s Mem. 11.)  An LLC operating agreement is a contract.  See River Links at Deer Creek, LLC v. Melz, 108 S.W.3d 855, 857 (Tenn. Ct. App. 2002) (referring to an operating agreement formed under Tennessee's Limited Liability Company Act, §§ 48-201-101, et seq., as a contract).  To establish a claim for breach of contract, a plaintiff must show: 1) an enforceable contract, 2) nonperformance amounting to a breach of the contract, and 3) damages.  ARC LifeMed, Inc. v. AMC-Tennessee, Inc. 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citation omitted).

The Agreement required each physician to abide by practice standards.  (Pl.'s Statement ¶ 4; see also Ex. A § 6.7.)  Because Yoser admits that "[w]ith regard to VRF's claim that Dr. Yoser breached his duty to it as set forth in the Operating Agreement, it is clear that he did so."  (Def.'s Resp. 13), summary judgment is GRANTED on VRF's breach of duty claim.  See JPMorgan Chase Bank, N.A. v. Aquilato, No. 3:09-00959, 2010 WL 4537925, at *2 (M.D. Tenn. Nov. 3, 2010) (granting summary judgment where plaintiff established breach of contract elements).

16

### C. Conversion

VRF argues that Yoser converted VRF's property to his own benefit. (See Pl.'s Mem. 11.) Under Tennessee law, conversion "is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." Ralston v. Hobbs, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citations omitted).

Yoser has admitted that he procured unused medication from VRF and resold that medication. (Def.'s Statement. ¶¶ 17, 19, 24.) Yoser argues that, because he has admitted that he "took leftover medication[] from the Practice" (Def.'s Statement ¶ 22), it "is not clear and unsubstantiated by the facts . . . whether his taking of the leftover medication was a theft and/or a misrepresentation" (Def.'s Resp. 13). Yoser's admission that he "procured unused prescription drugs from VRF" is separate from his admission that he "took leftover medication[] from the Practice." (See Def.'s Statement ¶¶ 17, 22.) Because not all "unused" prescription drugs are necessarily "leftover," the fact that Yoser "took leftover medication[]" does not show that he did not also "procure unused prescription drugs," other than those that were "leftover." (See Def.'s Statement ¶¶ 17, 22.) Because Yoser admits that he took unused medication that was the property of VRF and resold it for his own benefit, VRF has

17

established its claim for conversion, and summary judgment is
GRANTED on that claim.  Cf. May v. Scott, 388 F. Supp. 2d 828,
838 (W.D. Tenn. 2005) (concluding that shareholder plaintiffs
established conversion at a bench trial by showing that the
defendant had repeatedly converted the corporation's assets to
fund his personal expenses).

### D. Damages

The Agreement provides that, in the event of for-cause
expulsion, an expelled member of the LLC "shall be liable to
[VRF] and the remaining Members for any and all damages caused
by the acts or omissions that gave rise to his Expulsion For
Cause, including, without limitation, attorneys' fees and
disbursements incurred in connection therewith (whether at
trial, on appeal or otherwise)."  (Ex. A § 6.12(c)(ii).)  Yoser
admits that he "is liable to the company for damages cause[d] by
his acts or omissions, including attorney's fees and
disbursements incurred in connection with his expulsion."
(Def.'s Resp. 13).  He argues, however, that the damages claimed
by VRF are not related to his expulsion and are not reasonable.[9]
(See Def.'s Resp. 13; see also Def.'s Statement ¶¶ 36-40.)

### 1. Fees and Expenses

---

[9] In his memorandum, Yoser argues, "While this Court may find the VRF has
incurred damages, the amounts, reasonableness and necessity thereof are still
in questions [sic] and, accordingly, a judgment for those amounts under a
summary judgment proceeding would not be proper."  (Def.'s Resp. 13.)  The
Court construes that statement as challenging whether the fees claimed by VRF
are "in connection" with his misconduct and reasonable.

VRF claims that it incurred legal and investigatory costs in connection with Yoser's misconduct. (See Pl.'s Mem. 12, 14.) "Attorney fees and costs are recoverable under an express indemnity contract 'if the language of the agreement is broad enough to cover such expenditures.'" Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 933 (6th Cir. 2006) (quoting Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985)). Courts enforce contracts providing for attorney's fees "according to their plain terms." Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975) (citing Eleogrammenos v. Standard Life Ins. Co., 149 S.W.2d 69 (Tenn. 1941)). As noted, an LLC operating agreement is a contract. See River Links, 108 S.W.3d at 857

Under the plain language of the indemnity provision, Yoser must reimburse VRF for all attorney's fees and disbursements in connection with his misconduct. See Power & Telephone Supply, 447 F.3d at 933; Bob Pearsall Motors, 521 S.W.2d at 580; (Ex. A § 6.12(c)(ii)). Although Yoser need not reimburse VRF for unrelated fees and expenses, the record demonstrates that all were related. VRF has introduced affidavits and exhibits showing that it incurred the following attorney's fees 1) $35,188.00 in fees and expenses from Waller Lansden to investigate, report, and respond to Yoser's misconduct (Brown Decl. ¶ 19; Ex. D, ECF No. 26-7); 2) $142,254.56 in fees and

expenses from Burr & Forman related to Yoser's expulsion and the subsequent government investigation of his conduct and Medicare fraud (Brown Decl. ¶ 21; Ex. E, ECF No. 26-8); and 3) $55,468.59 in fees and expenses from Burr & Forman for the instant civil litigation (Brown Decl. ¶ 22; Ex. F, ECF No. 26-9).

Yoser questions the relationship between the claimed fees and expenses and his misconduct, emphasizing that "many of the costs VRF claims occurred" after his May 2008 expulsion. (Def.'s Resp. 13.)  The mere fact that VRF incurred the claimed fees after Yoser's expulsion does not show that they are unrelated to the "acts and omissions" that led to his expulsion. The entries on Waller Lansden's timekeeping records show that the work it performed for VRF after May 30, 2008, related to Yoser's acts and omissions, including the potential consequences of Yoser's actions for VRF.  (See Ex. D.)  The post-May 30, 2008 entries on Burr & Forman's timekeeping records similarly demonstrate that its work for VRF related entirely to government investigations of Yoser's conduct and the instant civil litigation, all of which stem from the "acts and omissions" that led to Yoser's expulsion.  (See Exs. D-E.)  Yoser has not challenged specific entries or introduced evidence that conflicts with the affidavits and exhibits VRF has submitted. The only evidence in the record demonstrates that VRF incurred the investigation and attorney's fees "in connection" with the

acts and omissions that "gave rise to his expulsion," as provided by the Agreement. (See Ex. A § 6.12(c)(ii).)

Yoser alternatively argues that the attorney's fees and expenses are not reasonable. (See Def.'s Resp. 13.) Although the Agreement does not explicitly state that any attorney's fees must be reasonable, "the amount of the fee must be reasonable, even if the contract does not so require." First Peoples Bank of Tenn. v. Hill, No. E2009-02067-COA-R3-CV, 2010 WL 2106215, at *11 (Tenn. Ct. App. Nov. 17, 2010) (citing Jerry T. Beech Concrete Contractor, Inc. v. Larry Powell Builders, Inc., No. M2001-02709-COA-R3-CV, 2003 WL 726955, at *1 (Tenn. Ct. App. Mar. 4, 2003)). The party seeking to enforce a contractual agreement for attorney's fees bears the burden of proof as to whether a fee is reasonable. See Taylor v. T&N Office Equip., Inc., No. 01A01-9609-CV-00411, 1997 WL 272444, at *4 (Tenn. Ct. App. May 23, 1997) (citing Wilson Mgmt. Co. v. Star Distributors Co., 745 S.W.2d 870, 873 (1988)). In deciding whether a requested fee is reasonable, courts consider:

   1. The time devoted to performing the legal service.

   2. The time limitations imposed by the circumstances.

   3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

   4. The fee customarily charged in the locality for similar legal services.

5. The amount involved and the results obtained.

6. The experience, reputation, and ability of the lawyer performing the legal service.

Connors v. Connors, 594 S.W.2d 672, 676 (Tenn. 1980) (citation omitted).

VRF has submitted exhibits in which the firms providing services detail their work.  (See Exs. E-F.)  Yoser does not challenge the reasonableness of individual entries on those exhibits.   Rather, he challenges the overall reasonableness of the total fees and expenses.   Having reviewed the fees and expenses charged by Waller Lansden and Burr & Forman in light of the Connors factors, the Court concludes that they are reasonable.   See Connors, 594 S.W.2d at 676.   Because VRF incurred the attorney's fees and expenses detailed above in connection with the acts and omissions giving rise to Yoser's expulsion, and because those fees and expenses are reasonable, VRF is entitled to indemnification for those costs from Yoser.

In addition to attorney's fees, VRF claims $31,764.00 in fees and expenses it paid SPG to investigate Yoser's misconduct. (See Def's Mem. 12, 14; Brown Decl. ¶ 18, ECF No. 26-3; Ex. C, ECF No. 26-6).   Like his argument about attorney's fees, Yoser argues that amounts paid to SPG were not incurred in connection with his expulsion and are not reasonable.   (See Def.'s Resp. 13.)   VRF has submitted evidence showing that it contracted with

SPG to analyze possible financial transactions and thefts, including "analysis of historical financial records, analysis of certain pharmaceutical inventory records, and interviewing some . . . employees." (Ex. 6 at 3.) Because Yoser has introduced no evidence to the contrary, a reasonable factfinder must conclude that the amounts VRF paid to SPG were in connection with Yoser's expulsion. Having reviewed the investigatory fees in light of the Connors factors, the Court also concludes that they are reasonable. See Connors, 594 S.W.2d at 676. Because VRF incurred the investigatory fees and expenses detailed above in connection with the acts and omissions giving rise to Yoser's expulsion, and because those fees and expenses are reasonable, VRF is entitled to indemnification for those costs from Yoser.

The Agreement's indemnity clause requires that an expelled member reimburse the Practice for "all damages caused by the acts or omissions that gave rise to his expulsion . . . including, without limitation, attorneys' fees and disbursements in connection therein," (see Ex. A § 6.12(c)(ii)), and VRF has shown that the fees and expenses are related to Yoser's misconduct and are reasonable. Therefore, under the Agreement's indemnity provision, Yoser must indemnify VRF for $209,206.56 in professional fees and expenses it incurred in connection with Yoser's criminal misconduct and $55,468.59 in attorney's fees

incurred in the instant civil litigation.  Therefore, the Court ORDERS Yoser to indemnify VRF in the amount of $264,675.15.

### 2. Other Damages

VRF argues that Yoser must indemnify it for the cost of the medication he diverted and resold to VRF and third parties. (Pl.'s Mem. 13-14.)  According to VRF, those costs total $3,420,210.00.  (Id. 14.)  Yoser argues that VRF has not introduced evidence showing that it incurred damages in that amount.  (Def.'s Resp. 12-13.)

Yoser has admitted that he received $3,420,210.00 from VRF and various third parties when he resold the medication that he had procured from VRF.  (See Pl.'s Statement ¶¶ 26-31.)  As noted, that Yoser received that amount in exchange for the medication he took from VRF does not show that VRF suffered losses in that amount.  See supra Part IV.A.  VRF's losses would be the cost of the diverted medication to VFR minus any reimbursement it received from patients or third-party payers, when it billed them for the medication Yoser had used.  (See Pl.'s Statement ¶ 9.)  Because VRF has introduced evidence showing the amounts Yoser received for the redistributed medication, but none showing the amounts it lost, VRF has not met its burden of "clearly and convincingly establishing" that Yoser owes the Practice $3,420,210.00 for the medication Yoser

diverted and resold.  See Kochins, 799 F.2d at 1133.  Therefore, further damages based on that evidence are DENIED at this stage.

### E. Declaratory Relief

VRF seeks a declaratory judgment that any debt Yoser owes it for damages resulting from his misconduct constitutes a "debt for money obtained by false pretenses, a false representation, or actual fraud," under 11 U.S.C. § 523(a)(2)(A) or a "debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," under 11 U.S.C. § 523(a)(4).  (Pl.'s Mem. 12-13.)  That judgment would bar a bankruptcy court from discharging the damages Yoser owes VRF should Yoser declare bankruptcy.  See 11 U.S.C. § 523 (outlining exceptions to dischargeable debts).  Yoser argues that the decision about whether any debt that results from a damage award in this case is dischargeable is best left to the bankruptcy court.  (Def.'s Resp. 13-14.)

The existence of "another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."  Fed. R. Civ. P. 57.  In exercising their discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, however, courts may "deny declaratory relief if an alternative remedy is better or more effective," Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 562 (6th Cir. 2008) (quoting Grand Trunk Western R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326

25

(6th Cir. 1984)) (internal quotation marks omitted).   If Yoser
declares bankruptcy, VRF will have the opportunity to argue
before the bankruptcy court that one of the discharge exceptions
applies to any debt Yoser owes it.   See 11 U.S.C. § 523.
Because the bankruptcy court would be better able to decide
whether the exceptions apply, using its sound expertise in the
context of Yoser's bankruptcy, a remedy in that court would be
more effective.   Because VRF cites no authority to support its
request for a declaratory judgment and an alternative remedy is
better, VRF's request for declaratory relief is DENIED.[10]

   **V.   Conclusion**

   For the foregoing reasons, the Court DENIES VRF's Motion
for Summary Judgment on its RICO claims against Yoser.   The
Court GRANTS VRF's Motion for Summary Judgment on its breach of
duty and conversion claims against Yoser.   The Court ORDERS
Yoser to indemnify VRF in the amount of $264,675.15.   The Motion
for Summary Judgment is DENIED in all other respects.

   So ordered this 19th day of January, 2011.


                              s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.

---

[10]   Declaratory judgments must also satisfy the case or controversy
justiciability requirement.   U.S. Const. art. III, § 2; 28 U.S.C. § 2201;
MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007).   Because,
according to the record before the Court, Yoser has not yet declared
bankruptcy, VRF has not shown that the possible dispute over whether Yoser's
debt is dischargeable is "of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment."   See MedImmune, 549 U.S. at 127 (quoting
Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

UNITED STATES DISTRICT JUDGE